**EDGCOMB LAW GROUP, LLP**
TIFFANY R. HEDGPETH (SBN 175134)
thedgpeth@edgcomb-law.com
333 N. Glenoaks, Suite 610
Burbank, CA 91502-1144
Telephone: (818) 861-7618
Facsimile: (818) 861-7616
LADD CAHOON (SBN 193653)
lcahoon@edgcomb-law.com
601 Montgomery Street, Suite 1200
San Francisco, CA 94111
Telephone: (415) 399-1560

*Counsel for Plaintiff,*
*San Mateo Investment Co.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN MATEO INVESTMENT CO., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE ESTATE OF ROBERT MASCIOLA, deceased; MARTIN FRANCHISES INC., a Delaware corporation; EATON CORPORATION PLC, a foreign corporation, MIU CHIANG JUE, CLEMEN JUE, MABEL WONG, and DOES 1-10,<br><br>Defendants. | Case No.: 22-3291<br><br>**COMPLAINT FOR:**<br><br>1. **COST RECOVERY UNDER THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT, 42 U.S.C. § 9607(a);**<br>2. **DECLARATORY RELIEF**<br><br>Complaint filed: |

Plaintiff San Mateo Investment Company ("SMIC") alleges the following against the Estate of Robert Masciola, deceased ("Estate"), Martin Franchising, Inc. ("MFI"), Eaton Corporation PLC ("Eaton"), Miu Chiang Jue, Clemen Jue, Mabel Wong, and Does 1-10 (collectively, "Defendants"):

## JURISDICTION AND VENUE

1. This Court has jurisdiction over SMIC's federal claims asserted herein pursuant to 28 U.S.C. § 1331, the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") § 107(a), 42 U.S.C. § 9607(a).

2. Venue is proper in the Northern District of California because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendants are subject to personal jurisdiction in this District.

## PARTIES

3. Plaintiff SMIC is a corporation existing under the laws of California.

4. Defendant Estate is the estate of Robert Nathan Masciola. ("Masciola"), an individual who resided in California and who died on November 10, 2003. On information and belief, the Estate resides and Masciola resided within this district. The Estate is named herein under California Probate Code section 550 et seq., in that SMIC is informed and believe that Masciola maintained policies of liability insurance applicable to this action and that such policies provide coverage for the damages alleged in this Complaint, and that said insurance companies are presently responsible for the performance of all duties and obligations owed by the Estate. SMIC expressly limits all of the claims set forth herein against the Estate to the extent of any insurance policy or policies that cover the herein alleged

claims. Pursuant to California Probate Code section 550 et seq., the insurance companies who provide the applicable insurance policies are the real parties in interest and the Estate is merely a nominal defendant.

5. Defendant MFI is a Delaware corporation with headquarters in Ohio.

6. Defendant Eaton is a foreign corporation with headquarters in Ireland and locations and operations in the United States.

7. Defendant Miu Chiang Jue is an individual residing within this district.

8. Defendant Clemen Jue is an individual residing within this district.

9. Defendant Mabel Wong is an individual residing within this district.

10. SMIC does not know the true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants Does 1 through 10, inclusive, and therefore sues said Defendants under fictitious names. SMIC will amend this Complaint to show their true names and capacities when and if the same has been ascertained.

**GENERAL ALLEGATIONS**

11. SMIC is the owner of property located at 111 West 25th Avenue, San Mateo, California ("Property").

12. From approximately 1960 to 1977, Masciola operated One Hour Martinizing ("OHM"), a dry cleaner establishment, at the Property. OHM continued to operate at the Property under different ownership until approximately 1987 or 1988. Dry cleaning operations continued after that time, but not as OHM.

13. On information and belief, OHM was a franchise of Martin Equipment Sales, Martin Sales and other similar Martin trade names (collectively,

"Martin"). Martin operated dry cleaning franchises while a division of the American Laundry Machinery Industries division of McGraw Edison Company from approximately 1960 to 1978.  In 1985, McGraw Edison Company merged into Cooper Industries, Inc. ("Cooper"), making Cooper Martin's successor in interest.  Cooper was acquired by Eaton Corporation in 2012 to form a new company, Defendant Eaton.

14. On information and belief, effective May 1, 1978, McGraw Edison Company sold certain dry cleaning assets, including the Martin franchise agreements for OHM, to MFI.

15. On information and belief, as a result of the corporate transactions, Eaton is the successor to the Martin liabilities created by OHM franchises until May 1, 1978, and MFI is the successor to liabilities created by OHM franchises on and after May 1, 1978.

16. On information and belief, the Franchise Agreements for OHM dictated that the OHM operators use only specific dry cleaning equipment that was approved by Martin and MFI.  Moreover, Martin and MFI provided instruction to Masciola and other OHM operators at the Property regarding the dry cleaning process and use and handling of perchloroethylene ("PCE"), a hazardous substance and the primary ingredient used in the dry cleaning equipment.

17. On information and belief, Martin and MFI owned the dry cleaning equipment for at least portions of the time OHM operated at the Property.

18. From approximately 1977 to approximately 1999, Miu Chiang Jue, Clemen Jue, and Mabel Wong and her now-deceased husband, Antonio Wong (collectively, "Wongs/Jues"), operated OHM, and later J&C One Hour Cleaners, at

the Property.

19. In 2016, the San Mateo County Health Department, Environmental Health Services, Groundwater Protection Program ("Health Department") contacted the then dry cleaner operator of the Property, Mr. Quoc Hong of J&C One Hour Cleaners, to inform him that PCE had been detected in environmental media near the Property. Subsequently, the Health Department issued letters to other past operators of dry cleaners at the Property, including the Wongs/Jues, as well as Property owner SMIC, requesting their participation in environmental investigation and cleanup activities in relation to the Property.

20. At the request of the Health Department, environmental investigations were performed at the Property on behalf of SMIC, without any contribution from Defendants, confirming that PCE and its degradation products, including TCE, are present in soil and groundwater beneath the Property.

21. On information and belief, the presence of PCE is a result of, *inter alia*, sudden and accidental leaks and spills from dry cleaning equipment that at times was owned and operated by Masciola, Martin and MFI, and the Wongs/Jues, as well as other sudden and accidental releases of PCE that occurred during Masciola's and the Wongs/Jues' operation of the Property.

22. SMIC has incurred costs performing investigations to define the lateral and vertical extent of contamination in all impacted media (soil, soil vapor, groundwater, and indoor air) and to develop plans for remediation. Additionally, further investigations, remediation, and mitigation may include (1) a pilot study workplan, (2) a pilot study for remediation, (3) additional subsurface characterization (including installation/sampling of additional sub-slab soil vapor

points and deep soil vapor probes, and installation/development/sampling of groundwater monitoring wells), (4) monitoring/reporting of network of soil vapor points/probes, indoor/outdoor air, and groundwater monitoring wells, (5) preparation of a remedial system operations and monitoring plan, (6) installation of a vacuum-based extraction remediation system, (7) remedial system operation, monitoring and reporting, (8) remedial efforts on downgradient groundwater plume, including work plan and summary report, (9) preparation of a human health risk assessment, and (10) addition monitoring and mitigation.

## FIRST CLAIM FOR RELIEF
## (CERCLA Joint And Several Cost Recovery
## Under 42 U.S.C. § 9607(a))

23. SMIC incorporates by reference, as if fully set forth herein, Paragraphs 1-22 of this Complaint.

24. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), imposes liability on, among others, "the owner and operator of a vessel or a facility," "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of," "any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances . . . from which there is a release, or a threatened release

which causes the incurrence of response costs of a hazardous substance . . . .," and "any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities… from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance…." Such persons are liable for, inter alia, "any other necessary costs of response incurred by any other person consistent with the national contingency plan."

25. SMIC is a "person" within the meaning of CERCLA §§ 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a).

26. Masciola was a "person" within the meaning of CERCLA §§ 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a).

27. Miu Chiang Jue is a "person" within the meaning of CERCLA §§ 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a).

28. Clemen Jue is a "person" within the meaning of CERCLA §§ 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a).

29. Mabel Wong is a "person" within the meaning of CERCLA §§ 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a).

30. Eaton is a "person" within the meaning of CERCLA §§ 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a).

31. MFI is a "person" within the meaning of CERCLA §§ 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a).

32. Does 1-10 are "persons" within the meaning of CERCLA §§ 101(21) and 107(a), 42 U.S.C. §§ 9601(21) and 9607(a).

33. The Property is a "facility" for purposes of CERCLA §§ 101(9) and

107(a), 42 U.S.C. §§ 9601(9), 9607(a).

34.  The dry cleaning equipment that released PCE was a "facility" for purposes of CERCLA §§ 101(9) and 107(a), 42 U.S.C. §§ 9601(9), 9607(a).

35.  Masciola was an operator of the dry cleaning equipment and the Property at the time of PCE disposal into soil and groundwater within the meaning of CERCLA §§ 101(20)(A) and 107(a), 42 U.S.C. §§ 9601(20)(A) and 9607(a).

36.  Masciola was an owner of the dry cleaning equipment at the time of PCE disposal into soil and groundwater within the meaning of CERCLA §§ 101(20)(A) and 107(a), 42 U.S.C. §§ 9601(20)(A) and 9607(a).

37.  Miu Chiang Jue was an operator of the dry cleaning equipment and the Property at the time of PCE disposal into soil and groundwater within the meaning of CERCLA §§ 101(20)(A) and 107(a), 42 U.S.C. §§ 9601(20)(A) and 9607(a).

38.  Miu Chiang Jue was an owner of the dry cleaning equipment at the time of PCE disposal into soil and groundwater within the meaning of CERCLA §§ 101(20)(A) and 107(a), 42 U.S.C. §§ 9601(20)(A) and 9607(a).

39.  Clemen Jue was an operator of the dry cleaning equipment and the Property at the time of PCE disposal into soil and groundwater within the meaning of CERCLA §§ 101(20)(A) and 107(a), 42 U.S.C. §§ 9601(20)(A) and 9607(a).

40.  Clemen Jue was an owner of the dry cleaning equipment at the time of PCE disposal into soil and groundwater within the meaning of CERCLA §§ 101(20)(A) and 107(a), 42 U.S.C. §§ 9601(20)(A) and 9607(a).

41.  Mabel Wong was an operator of the dry cleaning equipment and the Property at the time of PCE disposal into soil and groundwater within the meaning

42. Mabel Wong was an owner of the dry cleaning equipment at the time of PCE disposal into soil and groundwater within the meaning of CERCLA §§ 101(20)(A) and 107(a), 42 U.S.C. §§ 9601(20)(A) and 9607(a).

43. Eaton's predecessor, Martin, was an operator of the dry cleaning equipment and the Property at the time of PCE disposal into soil and groundwater within the meaning of CERCLA §§ 101(20)(A) and 107(a), 42 U.S.C. §§ 9601(20)(A) and 9607(a).

44. Eaton's predecessor, Martin, was an owner of the dry cleaning equipment at the time of PCE disposal into soil and groundwater within the meaning of CERCLA §§ 101(20)(A) and 107(a), 42 U.S.C. §§ 9601(20)(A) and 9607(a).

45. MFI was an operator of the dry cleaning equipment and the Property at the time of PCE disposal into soil and groundwater within the meaning of CERCLA §§ 101(20)(A) and 107(a), 42 U.S.C. §§ 9601(20)(A) and 9607(a).

46. MFI was an owner of the dry cleaning equipment at the time of PCE disposal into soil and groundwater within the meaning of CERCLA §§ 101(20)(A) and 107(a), 42 U.S.C. §§ 9601(20)(A) and 9607(a).

47. Does 1-10 are persons liable under CERCLA § 107(a), 42 U.S.C. § 9607(a).

48. As a result of the release and threatened release of hazardous substances at or from the dry cleaning equipment and the Property, SMIC has incurred costs of response as the term is defined by § 101(25) of CERCLA, 42 U.S.C. § 9601(25), and used in CERCLA § 107(a), 42 U.S.C. § 9607(a).

49. The costs of response incurred by SMIC in connection with the releases from the dry cleaning equipment and Property have been necessary and incurred in a manner consistent with the National Contingency Plan, 40 C.F.R. Part 300.

50. Pursuant to CERCLA §107(a), 42 U.S.C. § 9607(a), the Estate of Masciola, Miu Chiang Jue, Clemen Jue, Mabel Wong, Eaton, MFI, and Does 1-10 are each strictly, jointly and severally liable for the past and future costs of response incurred and to be incurred by SMIC in response to the release or threatened release of hazardous substances at and from the dry cleaning equipment and Property.

## SECOND CLAIM FOR RELEIF
### (Declaratory Relief Under Federal Law)

51. SMIC incorporates by reference, as if fully set forth herein, Paragraphs 1-50 of this Complaint.

52. An actual, substantial, and justiciable controversy exists between SMIC and Defendants. SMIC contends that Defendants are responsible for addressing the contamination at and emanating from the former dry cleaning equipment and Property and, on information and belief, Defendants dispute this.

53. Pursuant to 28 U.S.C. §§ 2201 and 2202, SMIC desires and is entitled to a declaration of the parties' respective rights and duties, including a declaration that Defendants are responsible for investigating, remediating, and mitigating the contamination at and emanating from the dry cleaning equipment and Property. No

adequate or speedy remedy exists for SMIC in the absence of such a judicial declaration. Accordingly, SMIC requests a declaration from the Court setting forth Defendants' liability for all costs and/or damages resulting from releases at and from the dry cleaning equipment and Property.

54. A declaratory judgment is proper because it will obviate the need for multiple suits and provide a complete determination of the rights and obligations of the parties.

### THIRD CLAIM FOR RELIEF
### (Declaratory Relief Under CERCLA)

55. SMIC incorporates by reference, as if fully set forth herein, Paragraphs 1-54 of this Complaint.

56. There is a present and actual controversy between SMIC and Defendants concerning their respective rights and obligations with respect to costs of response incurred in connection with the contamination at and emanating from the dry cleaning equipment and Property.

57. Pursuant to § 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and 28 U.S.C. §§ 2201 and 2202, SMIC requests a declaration holding Defendants liable for all costs and/or damages resulting from releases from the dry cleaning equipment and Property.

### PRAYER FOR RELIEF

WHEREFORE, SMIC prays for judgment and relief as follows:

1. On the First Claim for Relief, for cost recovery under CERCLA § 107(a), 42 U.S.C. § 9607(a), according to proof;

2. On the Second and Third Claims for Relief, for a declaration and an

order retaining jurisdiction to effectuate a declaration that Defendants are liable for costs incurred to respond to the release and threatened release of hazardous substances at or from the dry cleaning equipment and Property;

    3.    For attorneys fees and costs to the extent permitted by law.

    4.    For such other and further relief as the Court may deem just and proper.

DATED:  June 6, 2022                    Respectfully submitted,

                                          EDGCOMB LAW GROUP, LLP

                                          By:  /s/Tiffany R. Hedgpeth
                                          Tiffany R. Hedgpeth
                                          thedgpeth@edgcomb-law.com
                                          Attorneys for Plaintiff
                                          San Mateo Investment Co.